699 So.2d 186 (1997)
Stan PATE
v.
BILLY BOYD REALTY AND CONSTRUCTION, INC.
2960725.
Court of Civil Appeals of Alabama.
June 6, 1997.
*187 W. Cameron Parsons of Parsons & Sutton, Tuscaloosa, for appellant.
Christopher Lyle McIlwain of Hubbard, Smith, McIlwain, Brakefield & Shattuck, P.C., Tuscaloosa, for appellee.
ROBERTSON, Presiding Judge.
Stan Pate appeals from a judgment in favor of Billy Boyd Realty and Construction, Inc. ("BBRC"), on his counterclaims for specific performance of an alleged agreement to sell a one-half interest in property located on Watermelon Road near the cities of Northport and Tuscaloosa in Tuscaloosa County ("the Watermelon Road property"), or in the alternative for equal division of profits from the sale of the Watermelon Road property. We affirm.

Procedural Background
BBRC initiated this action by filing a onecount complaint, alleging that Pate had *188 breached a construction contract by failing to pay BBRC all sums due under the contract. Pate answered the complaint and counterclaimed, pleading ten counts for relief against BBRC which pertained to other alleged transactions between the parties. BBRC's motion for a summary judgment on its breach of contract claim was granted, and that judgment was made final pursuant to Rule 54(b), Ala.R.Civ.P. Pate did not appeal from that judgment, and it is not at issue in this appeal.
After the trial court made BBRC's summary judgment a final judgment, Pate voluntarily dismissed all of his claims against BBRC except for Count Six of his counterclaim. Count Six originally alleged that Pate and BBRC had entered into an agreement whereby BBRC would sell Pate a one-half interest in the Watermelon Road property in consideration of Pate's payment of half of the purchase price of the property (less one-half of the cost of any of Pate's improvements to the property and less one-half of any proceeds received from the State of Alabama as a result of condemnation proceedings). Pate further alleged in his original Count Six that he "stands ready, willing, and able to purchase one-half interest of the property subject to the terms and conditions of the purchase price...." Count Six's original prayer for relief sought specific performance of the alleged agreement to convey a one-half interest in the Watermelon Road property to Pate. BBRC answered this count, admitting that Pate had promised BBRC that he would pay it one-half of the $40,000 sale price of the Watermelon Road property, but alleging that Pate had not made such payment. BBRC also raised the Statute of Frauds, lack of consideration, and material breach of the agreement, among other things, as affirmative defenses.
BBRC filed a motion for a summary judgment based upon the affidavit and deposition of Billy Boyd (president and secretary of BBRC) and the deposition of Pate; this motion was supported by a memorandum brief and a narrative summary of undisputed facts. On the day scheduled for the hearing of this motion, Pate filed a responsive brief and his own narrative summary of facts in opposition, and moved the trial court to amend his counterclaim. Pate's proposed amended counterclaim included a new Count Eleven, which sought a judicial declaration of a resulting trust in his favor "to the extent of a one-half interest in the [Watermelon Road] property." The proposed amendment also substantially altered Count Six so as to refer to the contract between the parties as a "joint venture" contract, to add various factual allegations concerning the parties' conduct concerning the Watermelon Road property, and to seek a declaration that the written memorandum of the parties' contract is enforceable and that any profits from the sale of the Watermelon Road property be equally divided. BBRC thereafter filed a reply memorandum addressing these proposed amended counts.
The trial court heard oral argument on BBRC's summary judgment motion and on Pate's motion to amend. Ultimately, the trial court entered a judgment in favor of BBRC, concluding that "the [S]tatute of [F]rauds would preclude enforcement of an oral agreement to sell land, and the written contract labeled joint venture did not provide for the sale of a 1/2 interest in the" Watermelon Road property. Moreover, while the trial court granted Pate leave of court to amend Count Six and to add Count Eleven, it concluded that Pate's resulting trust theory in Count Eleven "would not be viable" and that Count Six as amended would not afford the relief Pate sought.[1]
Pate appealed to the Alabama Supreme Court. That court transferred Pate's appeal to this court, pursuant to § 12-2-7(6), Ala. Code 1975.
Before we turn to the applicable standard of review and the pertinent facts of record, we deem it prudent to determine what portions of the judgment have been preserved for our review. We note that in *189 Part V of his reply brief in this court, Pate contends that "a resulting trust exists in [his] favor ... for a one half interest in the property and any profits...." While this contention appears in the record in Count Eleven of his counterclaim as amended, Pate did not contend in his principal brief on appeal that the trial court erred in failing to recognize this theory of relief; instead, that brief merely raises issues pertaining to the propriety of the trial court's judgment concerning Count Six.[2] It is well settled that issues not raised in a party's initial brief on appeal may not be raised in a reply brief. C & S Family Credit of Alabama, Inc. v. McNairy, 613 So.2d 1232, 1232 n. 1 (Ala.1992). This rule applies even to issues that are properly raised in the trial court. See Horn v. State Bd. of Examiners in Counseling, 689 So.2d 93, 94 (Ala. Civ.App.1996). Any error of the trial court in failing to recognize a resulting trust in favor of Pate has therefore been waived, and we consider only the propriety of the trial court's judgment as it pertains to Count Six as last amended.

Standard of Review
Rule 56, Ala.R.Civ.P., sets forth a twotiered standard for determining whether to enter a summary judgment. In order to enter a summary judgment, the trial court must determine: 1) that there is no genuine issue of material fact, and 2) that the moving party is entitled to a judgment as a matter of law. In determining whether a summary judgment was properly entered, the reviewing court must view the evidence in a light most favorable to the nonmovant. Long v. Jefferson County, 623 So.2d 1130, 1132 (Ala. 1993). We note that Rule 56 is to be read in conjunction with the "substantial evidence rule" (§ 12-21-12, Ala.Code 1975). Hurst v. Alabama Power Co., 675 So.2d 397, 398 (Ala. 1996). In order to defeat a defendant's properly supported motion for summary judgment, the plaintiff must present "substantial evidence," i.e., "evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved." Id. (quoting West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala.1989)).
Where, as here, a summary judgment in favor of a defending party is based upon an affirmative defense raising the applicability of the Statute of Frauds, our standard of review is as follows:
"Even though the plaintiff [or, as here, the counterplaintiff] may produce evidence of a genuine issue of material fact on matters such as the terms or existence of a contract, if the other side makes out a prima facie case under a special plea of the affirmative [defense] of the Statute of Frauds ... it is incumbent upon the opposite party to come forward with at least a scintilla of proof that [this defense does] not apply to him. Otherwise, summary judgment is appropriate."
Casey v. Travelers Ins. Co., 585 So.2d 1361, 1363-63 (Ala.1991) (internal quotations omitted; quoting Durham v. Harbin, 530 So.2d 208, 210 (Ala.1988)). Of course, Casey's reference to a "scintilla of proof" is obsolete (see Ala.Code 1975, § 12-21-12, concerning the quantum of evidence necessary to create a fact question).

Facts
The record reveals the following pertinent facts. In 1992, the Watermelon Road property was owned by Timon Smith, who placed an advertisement in a local newspaper seeking a purchaser for the property. When Pate saw the advertisement, he brought the Watermelon Road property to the attention of Billy Boyd, a social and business acquaintance of Pate's who held a real estate broker's license and who owned and operated BBRC. The two men examined the Watermelon Road property and entered into an oral agreement to buy the property, with Boyd to handle the negotiations; when Boyd asked Pate whose name should appear on the deed, Pate stated that he "didn't care."
After Boyd's initial offer to Smith's broker was rejected, Smith's broker indicated that *190 the property could be had for $40,000 plus commission, and Pate and Boyd orally agreed to offer this amount. Pate and Boyd also orally agreed that Boyd would pay for the Watermelon Road property with his own funds, and that title to the property would be taken in the name of BBRC, but that the two of them would share in the profits and losses until the property was resold. The parties' testimony concerning Pate's contribution to the effort is in conflict, but it appears that while Boyd expected Pate immediately to reimburse BBRC $20,600 (representing onehalf of the net purchase price), Pate envisioned that he would "manage" the Watermelon Road property while it was owned by BBRC, and that (depending upon relative costs) he would either perform some improving work upon the property or would enter into contracts so that such work would be done by others. However, it is undisputed that Pate never supplied any monetary consideration towards the purchase of the Watermelon Road property and that he never paid any sums to Boyd to reimburse him after the property was conveyed.
Smith accepted the $40,000-plus-commission offer; Boyd borrowed $40,000 from a local bank to finance the purchase of the property, and on March 20, 1992, he deeded the Watermelon Road property to BBRC. On the same date, Boyd (as president of BBRC) and Pate signed a writing which reads as follows:
"March 20, 1992
"The 4.82 acres on the Watermelon Road, Northport, Al. Purchased [sic] on March 20 1992 by Billy Boyd Realty & Construction, Inc is a Joint Venture between Billy Boyd Realty & Construction, Inc. and Stan Pate. They both agree to share equally in any profits or losses until this property is sold or leased. Attached to this [agreement] is the Settlement Statement and a copy of the commission check to Elon Miller Realty."[3]
After the signing of this agreement, Pate's agents spent an aggregate of 5 working days on the Watermelon Road property, clearing it on three occasions in 1992. However, Pate has done no work on the Watermelon Road property since August 1992; in contrast, since BBRC was deeded the property in March 1992, it has paid the property taxes on the property each year, has repaid a portion of the principal of (and paid interest upon) the $40,000 bank loan, and has both performed work itself and hired engineers to perform work on the property on several occasions since 1992.
Although Pate did not reimburse Boyd, they remained friends for several years after the transaction with Smith. In 1994, when the State of Alabama condemned a portion of the Watermelon Road property and paid BBRC $12,000 as compensation, Pate advised Boyd to make sure that the state installed adequate piping and storm sewers in connection with the taking; also, Pate and Boyd discussed the property from time to time. In addition, Pate secured BBRC's services in the construction of a Pizza Hut restaurant on another parcel of property. When BBRC contacted Pate in March 1995 regarding payment of this contract, which is the same contract made the basis of BBRC's original claim in this case, Pate wrote to counsel for BBRC claiming that Boyd had "outstanding balances" with Pate and requested that the parties meet to discuss, among other things, the Watermelon Road property. Specifically, Pate listed "interest," "condemnation award," "value of work done by each company on the property," "balance owed by ... Pate," "deed," and "buy/sell" as "topics for discussion" concerning the Watermelon Road property. However, the parties were unable to agree on these matters.

Legal Analysis
Alabama's Statute of Frauds provides, in pertinent part, as follows (emphasis added):
"In the following cases, every agreement is void unless such agreement or some note or memorandum thereof expressing the consideration is in writing and subscribed by the party to be charged therewith or some other person by him thereunto lawfully authorized in writing:
"....

*191 "(5) Every contract for the sale of lands, tenements or hereditaments, or of any interest therein, except leases for a term not longer than one year, unless the purchase money, or a portion thereof is paid and the purchaser is put in possession of the land by the seller."
Our supreme court has construed the abovequoted portion of the Statute of Frauds as including not only express agreements to transfer land, but also "oral agreements to enter joint ventures that call for the conveyance of real property." Charles J. Arndt, Inc. v. City of Birmingham, 547 So.2d 397, 400-01 (Ala.1989); see also Hunte v. Blake, 476 So.2d 75, 77 (Ala.1985). Notably, Pate does not challenge the applicability of the Statute of Frauds to the parties' transaction; instead, he contends (1) that the March 20, 1992, memorandum was sufficient to satisfy the Statute; (2) that his subsequent conduct falls within the statutory "part performance" exception; and (3) that BBRC is estopped from raising the statute. We address these issues in turn.

I. Insufficiency of the March 20, 1992, memorandum
By its terms, the Statute of Frauds requires a "note or memorandum" of any agreement falling within its terms that expresses the consideration for the agreement. In other words, parol evidence of consideration will not take a contract outside the Statute of Frauds. See Dillworth v. Holmes Furniture & Vehicle Co., 15 Ala.App. 340, 344, 73 So. 288, 290 (1916). Here, the parties' memorandum states only that a joint venture exists and that "[the parties] both agree to share equally in any profits or losses until [the Watermelon Road] property is sold or leased." Pate contends that the agreement to share profits and losses constitutes a sufficient statement of consideration; however, our supreme court has held that a mere agreement to share profits from a piece of real property is not a sufficient consideration to support a joint venture in lands. In Brewer v. Ewart, 210 Ala. 292, 97 So. 910 (1923), our supreme court held that a demurrer to a complaint that had alleged a joint venture for the purchase and sale of land should have been sustained, and the complaint dismissed, when it alleged only that the defendant was to buy the land with his own money but was to divide the net profits of any sale between the plaintiff and the defendant. Our supreme court stated that
"[t]he net result of it all was that [the defendant] gratuitously agreed to buy, hold, use, and sell the land for the joint benefit of himself and [the plaintiff]. Such a promise is not binding, and ... the demurrer pointing out the absence of valuable consideration, should have been sustained."

Brewer, 210 Ala. at 293, 97 So. at 911 (emphasis added). It follows that if a bare agreement to share net profits between two persons is not sufficient consideration for a valid joint venture in real property, a memorandum of an alleged joint venture agreement that relies upon only an agreement to share profits or losses (i.e., "negative" profits) is insufficient under the Statute of Frauds because it does not recite any consideration. Thus, we conclude that the Statute of Frauds is not satisfied by the March 20, 1992, memorandum.[4]

II. The "part performance" argument
Pate also argues that he fulfilled the "part performance" exception to the Statute of Frauds. As stated above, Ala.Code 1975, § 8-9-2(5), provides that a memorandum of an agreement to transfer an interest in land is not necessary if "the purchase money, or a portion thereof is paid," and "the purchaser is put in possession of the land by the seller." Both payment and possession must exist for the exception to apply. See Merchants Nat'l Bank v. Steiner, 404 So.2d 14, 19 (Ala.1981).
We do not reach the question of whether Pate's agents' work on the property during 1992 constitutes a sufficient "payment" to satisfy the part performance exception *192 to § 8-9-2(5), as we conclude from the record before us that Pate never entered into possession of the Watermelon Road property. To avoid the effect of the Statute of Frauds, and to take advantage of the part performance exception, a party's possession must be both notorious and exclusive. See Knight v. Smith, 250 Ala. 113, 114, 33 So.2d 242, 243 (1947). The only evidence concerning Pate's possession of the Watermelon Road property was his testimony that his agents performed clearing work on the property on three occasions between March 1992 and August 1992. During this same period, BBRC held the legal title to the property and also was performing work on the property; BBRC's work on the property, and the work of engineers it hired, continued through 1996, extending both during and after Pate's. Viewing the evidence in a light most favorable to Pate, we conclude that Pate has demonstrated only joint possession, which our supreme court has held "will be referable to the holder of the legal title," i.e., BBRC. Smith v. Smith, 466 So.2d 922, 926 (Ala. 1985). Moreover, the Smith court made clear that "[j]oint possession defeats the part performance doctrine for the additional reason that [the claimant's] possession is not notorious and exclusive." Id. (internal quotations omitted). Thus, the sporadic acts Pate relies upon in an effort to demonstrate his "possession" of the Watermelon Road property fall short of demonstrating "possession" under § 8-9-2(5), and the part performance exception to the Statute of Frauds does not apply to the parties' alleged oral joint venture contract.

III. Estoppel to raise the Statute of Frauds
Finally, relying upon Dean v. Myers, 466 So.2d 952 (Ala.1985), Pate contends that because BBRC has admitted the existence of the joint venture agreement before and during this action, BBRC is estopped to raise the Statute of Frauds as a defense to Pate's claim that he is entitled to a one-half share of the Watermelon Road property, or to a similar share of net profits upon its sale. We note that our supreme court has recognized that a party may be equitably estopped to raise the Statute of Frauds as a defense under certain limited circumstances. "[E]quity may intervene, even though the part performance requirement is not met, when fraud operates from the beginningthat is, when the breaching party procured the land or purchase money with no intent to perform the oral agreement admitted to have been made." Darby v. Johnson, 477 So.2d 322, 326-27 (Ala.1985).
However, our supreme court has made clear that Dean cannot be read as creating an estoppel bar to raising the Statute of Frauds merely because a party admits, either judicially or extrajudicially, the existence of or the substance of an oral contract within the Statute. See Durham, supra, 530 So.2d at 212 ("Alabama ... adheres to the general rule that a defending party may admit in judicial proceedings the substance of a contract and nevertheless assert the Statute in defense"); Darby, supra, 477 So.2d at 327 ("to enforce an oral contract against a party merely because he or she admitted to its existence and substance, against his or her own interest, is likely to promote perjury"); Casey, supra, 585 So.2d at 1363 ("The Statute of Frauds prevents enforcement of an oral agreement concerning the sale of land, even though both parties may acknowledge the existence of the agreement"). Thus, BBRC or Boyd's past acknowledgement of an oral joint venture agreement with Pate does not estop its assertion of the Statute of Frauds in this action.
What Durham and Darby stand for, then, is that "when the breaching party procure[s] land ... with no intent to perform the oral agreement admitted to have been made," equitable estoppel may prevent the breaching party from raising the Statute of Frauds as a defense to the oral contract. However, a party seeking to establish equitable estoppel to raise the Statute must shoulder the heavy burden of "clearly show[ing]" an "intention not to perform operating from the inception of the transaction." Durham, 530 So.2d at 212. Here, the evidence does not show that Boyd had no intention of carrying out the joint venture; in fact, Boyd testified that he would have considered Pate as having a one-half interest in the property had Pate reimbursed him for one-half of the *193 purchase price within 30 to 60 days of the transfer from Smith to BBRC. Also, Pate has at no time even alleged fraud on the part of BBRC from the inception. Accordingly, we conclude that under Darby and Durham, BBRC is not estopped from raising the Statute of Frauds as a defense to Pate's claim of breach of an oral joint venture agreement involving realty.
We also must reject Pate's related assertion that BBRC's acceptance of his services, i.e., his clearing of the Watermelon Road property on three occasions in 1992, estops it from asserting the Statute of Frauds. While at first glance Dean indicates that "acceptance of ... benefits by the promisor may give rise to estoppel," 466 So.2d at 955, Durham makes clear that (1) outside of the statutory part performance exception to the Statute of Frauds, only equitable estoppel[5] will defeat the Statute; and (2) the only relief available to a party conferring such benefits is quasi-contractual in nature, that is, restitution of the value of any benefits conferred. 530 So.2d at 213 n. 7. As we have noted, Pate has not alleged, nor has he adduced substantial evidence, that BBRC intended not to perform the oral agreement at its inception such that equitable estoppel could have arisen. Moreover, Pate has at no time sought bona fide restitution for the value of his or his agents' services;[6] we will not reverse on a ground that has not been argued by Pate either in this court or in the trial court. E.g., Landers v. O'Neal Steel, Inc., 564 So.2d 925, 926 (Ala.1990) ("This Court will not review an issue raised for the first time on appeal"); Bogle v. Scheer, 512 So.2d 1336,1337 (Ala. 1987) (issues not argued in appellate brief are waived).

Conclusion
Based upon the foregoing facts and authorities, we affirm the judgment of the trial court in favor of BBRC on Counts Six and Eleven of Pate's counterclaim.
AFFIRMED.
YATES, MONROE, and CRAWLEY, JJ., concur.
THOMPSON, J., dissents.
THOMPSON, Judge, dissenting.
I respectfully disagree. The standard of review applicable to a summary judgment is the same as the standard for granting the motion; that is, we must determine whether there was a genuine issue of material fact and, if not, whether the movant was entitled to a judgment as a matter of law. Our review is further subject to the caveat that this Court must review the record in a light most favorable to the nonmovant and must resolve all reasonable doubts against the movant. Wilson v. Brown, 496 So.2d 756 (Ala.1986); Harrell v. Reynolds Metals Co., 495 So.2d 1381 (Ala.1986). See also Hanners v. Balfour Guthrie, Inc., 564 So.2d 412 (Ala. 1990).
If we view the facts presented in a light which is favorable to Pate's position, a genuine issue of material fact exists concerning whether Pate is due restitution for benefits bestowed upon BBRC when clearing the Watermelon Road property and giving property development advice to the Appellee. Both parties have admitted that at least some clearing work was performed by Pate in March and August of 1992.
The trial court asserts in its December 6, 1996, order that since Pate "has not plead[ed] an action in restitution" that the issue was not before the court. I find this to be an incorrect statement of the case. Count Six of Pate's Amended Counterclaim clearly states that Pate "prays for such further and different relief as he may be entitled to under the premises, whether specifically prayed *194 for herein or not." I find this prayer to include restitution.
Even if Pate had failed to request restitution, the merger of law and equity necessitates that a judgment be based upon what is proved, not what is pleaded. Pleadings serve only as a rough guide to the nature of the case. It is the trial court's duty to grant whatever relief is appropriate based on the facts proved, regardless of whether there has been a specific demand for such relief. Rule 54(c), Ala.R.Civ.P.; Johnson v. City of Mobile, 475 So.2d 517 (Ala.1985). It is well settled that a party may be awarded damages even though he has requested only equitable relief.
Therefore, I believe summary judgment on the issue of restitution was premature and may produce a result which would serve to unjustly enrich BBRC if allowed to stand. I would reverse the decision of the trial court and remand the matter for the trial court to resolve the issue of whether Pate is due restitution for work performed.
NOTES
[1] The trial court opined that Durham v. Harbin, 530 So.2d 208 (Ala.1988), stood for the proposition that "promissory estoppel is not an exception to the statute of frauds and serves only to prevent unjust enrichment by allowing an action for restitution," which it concluded Pate had not pleaded.
[2] BBRC has moved to strike Part V of Pate's reply brief. We deny the motion on the authority of Kennesaw Life & Acc. Ins. Co. v. Old Nat'l Ins. Co., 291 Ala. 752, 754, 287 So.2d 869, 871 (1973) (raising of new issues in reply brief held not a ground for striking of brief).
[3] There are no additional terms pertaining to the "joint venture" in either of these documents, which appear in the record as exhibits to Boyd's deposition.
[4] We thus do not reach BBRC's contention that the Statute of Frauds is not satisfied because the parties' memorandum does not state the entire consideration for their agreement because it omits any mention of payment or of work by Pate, which Pate has attempted to prove by parol evidence.
[5] As opposed to "promissory" estoppel, which does not necessarily require proof of inherent fraud. See Durham, 530 So.2d at 213 n. 6.
[6] The trial court's judgment concluded that "[s]ince the Defendant [i.e., Pate] has not [pleaded] an action in restitution, that is not before this Court." Moreover, BBRC's appellate brief asserts that "Pate makes no claim for such [restitutionary] relief in this case." Pate has not challenged these statements regarding the form of relief he desires; rather, a fair reading of his appellate briefs indicates that he is actually seeking a one-half interest in the Watermelon Road property. Therefore, even had Pate adduced evidence of his right to recover restitutionary relief (cited by the dissent) has been waived.